IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUENELL JACKSON,<br><br>        Plaintiff,<br><br>    v.<br><br>NORTHWESTERN MEMORIAL HOSPITAL,<br><br>        Defendant. | No. 19-cv-4924<br>Judge Franklin U. Valderrama |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Junell Jackson (Jackson), a former employee for Defendant Northwestern Memorial Hospital (Northwestern), was terminated from her position as a Patient Registration Representative by Northwestern. Jackson filed suit against Northwestern, asserting a race discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §1981, *et seq.* and three Illinois common law claims. Northwestern now (i) moves to dismiss Counts II, III, and IV of the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and (ii) moves to strike certain allegations from the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f). R. 18, Mot. Dismiss.[1] For the reasons that follow, Northwestern's Motion to Dismiss Counts II, II, and IV is granted. Northwestern's Motion to Strike is granted with respect to identified allegations in paragraphs 1, 25, and 44. Northwestern's Motion to Strike is denied as moot with respect to identified

---

[1] Citations to the docket are indicated by "R." followed by the docket number and a page or paragraph citation where necessary.

1

allegations in paragraphs 54 and 70. Finally, Jackson's request for leave to amend is denied. R. 27, Pl.'s Resp.

## Background

Jackson, a black female, began working at Northwestern on or around April 25, 2015.[2] R. 17, Second Amended Complaint (SAC) ¶ 7. On November 21, 2016, she made an internal transfer to a full-time position in Northwestern's Emergency Department as a Patient Registration Representative. Id. ¶ 8. Tina Reagan (Reagan) was Jackson's new supervisor. Id. ¶ 9. On August 31, 2017, Jackson had her Annual Evaluation Review, which was conducted by Reagan and Anthony Wallace. Id. ¶ 12. Jackson was granted a rating of "Meets Expectations." Id. ¶ 13. The next day, on September 1, 2017, Reagan called and informed Jackson that she was being terminated. Id. ¶ 14. When pressed for an explanation, Reagan stated that "it was related to possible mishandling of patient information and fraudulent activity for personal gain based on an internal investigation." Id. ¶ 16. Later that day, on the afternoon of September 1, 2017, Jackson went to Northwestern's Human Resources Office to file an appeal of the termination decision. Id. ¶ 21. Jackson was instructed to complete an "Appeal Form" and was informed that she should receive a response within seven (7) business days. Id. ¶ 21.

On September 2, 2017, Jackson learned that a notice had been circulated to third parties, including security personnel, that indicated she was dangerous and

---

[2]The Court accepts as true all of the well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

should not be allowed on campus. *Id*. ¶ 25. On September 8, 2017, Jackson received a Disciplinary Action Report (Report) in the mail. *Id*. ¶ 27. The Report noted that on August 31, 2017, Northwestern had received a complaint that Jackson had "misused patient credit card information for personal purchases as well as provided patient credit card information to a friend to pay bills." *Id*. The Report was unsigned. *Id*. ¶ 28. Jackson alleges that she had never been disciplined nor reprimanded prior to her September 1, 2017 termination. *Id*. ¶ 33. Jackson is aware that she had been the subject of several hidden investigations conducted by Northwestern, but no department has informed her of any specific ordinances or laws that she violated, let alone any evidence of violations. *Id*. ¶ 34. Although Northwestern informed Jackson that the Chicago Police Department (CPD) was investigating her, Jackson was provided no further information and has never been questioned by CPD. *Id*. ¶ 35.

On July 22, 2019, Jackson first filed a multi-count Complaint against Northwestern. The Complaint has been amended several times with Jackson's Second Amended Complaint being the operative complaint. Jackson's Second Amended Complaint includes a claim for race discrimination in violation of Title VII of the Civil Rights Act of 1964 (Count I), as well as three Illinois common law claims for wrongful termination (Count II), breach of contract (Count III), and fraudulent misrepresentation (Count IV). Northwestern moves to dismiss Counts II, III, and IV of Jackson's Second Amended Complaint pursuant to Rule 12(b)(6) and moves to strike certain allegations asserted pursuant to Rule 12(f). The Court will first address the Motion to Dismiss, followed by the Motion to Strike, and finally, Plaintiff's request

for leave to amend, which was submitted as part of her Response to the pending Motion to Dismiss.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Discussion

### I. Wrongful Termination Against Public Policy (Count II)

In Count II, a claim for "wrongful termination against public policy," Jackson alleges that Northwestern terminated her without conducting an adequate investigation or following any of its procedures as outlined in the employee handbook.

SAC ¶ 52. Jackson further maintains that her discharge was motivated in whole, or in part, by defamatory statements that she (i) broke the rules, (ii) shared patient or employee information, and (iii) was armed and dangerous. *Id.* ¶ 54.

Northwestern argues that it is unclear what specific cause of action is alleged in Count II and asserts that Jackson fails to state a claim. The Court agrees. In discerning the asserted cause of action, Northwestern first notes that while Jackson references "defamatory statements" (*id.*), she does not plead the elements of a defamation claim under Illinois common law.[3] R. 20, Def.'s Mem. at 3. Second, Northwestern contends that "wrongful termination against public policy" is not a viable claim under Illinois's at-will employment regime and instead construes Count II as a claim for "retaliatory discharge." *Id.* Northwestern explains that retaliatory discharge, a narrow exception to the "at-will" doctrine, is the only viable wrongful termination claim under Illinois common law. *Id.* at 3–4 (citing *Mack v. City of Chi.*, 2019 WL 1331786, at *9 (N.D. Ill. Mar. 25, 2019)). To state a cause of action for "retaliatory discharge," Northwestern argues that Jackson must demonstrate that: 1) she was discharged, 2) in retaliation for her protected activities, and 3) the discharge violates a clear mandate of public policy. *Id.* Northwestern contends that Jackson fails to allege the second and third elements of retaliatory discharge—she does not allege that she engaged in any protected activities, let alone that her

---

[3]*Green v. Rogers*, 917 N.E. 450, 459 (Ill. 2009) (citing *Krasinski v. United Parcel Service, Inc.*, 530 N.E.2d 468 (1988) ("To state a defamation claim, a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages.")).

5

activities implicate a clear mandate of public policy. Def.'s Mem. at 4 (citing *Roberts v. Board of Trustees of Comm. Coll. Dist. No. 508*, Dkt. Nos. 123594, 123599—N.E.3d—2019 IL 123595, at \*4) (not yet released for publication)).

Jackson counters, disagreeing with Northwestern's characterization of Count II. Pl.'s Resp. at 4. Jackson maintains that she is not alleging a claim for retaliatory discharge, as Northwestern suggests. *Id.* She explains that she does not need to rely on retaliatory discharge, the exception to the at-will doctrine, because she was not an at-will employee (she would have had permanent employment as long as she performed her job satisfactorily). *Id.* Rather, Jackson contends that she is alleging a claim for wrongful termination against public policy, as written, and to state a claim, she must allege only that she was performing in line with her employer's "legitimate expectations," and similarly-situated employees were treated better. *Id.* (citing *Contreras v. Suncast Corp.*, 237 F.3d 756 (7th Cir. 2001)). Jackson maintains that she has alleged these elements.

In reply, Northwestern argues that these "legitimate expectations" and "similarly-situated" elements track the elements of a prima facie case of a Title VII discrimination claim and adds that Title VII discrimination was indeed the claim at issue in *Contreras*, the case cited as support in Plaintiff's response. R. 33, Def.'s Reply at 2. Northwestern contends that to the extent Jackson is alleging a Title VII discrimination claim, it should be dismissed as duplicative of Count I. *Id.* And, alternatively, to the extent Jackson is alleging a wrongful termination claim (as she repeatedly maintains), a wrongful termination claim is again only viable in the form

6

of a retaliatory discharge claim for an at-will employee, like Jackson. *Id*. This brings the Court back to square one.

Taking Jackson's statement that she is not alleging a retaliatory discharge claim at face value, the Court agrees with Northwestern and finds that it is unable to discern what cause of action Jackson purports to allege in Count II—a wrongful termination claim using Title VII discrimination elements, a duplicative Title VII discrimination claim, or something else entirely. It is well established under the Federal Rules and in the Seventh Circuit that a complaint must be dismissed if the claim for which the plaintiff seeks relief is not discernable. *See Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011) (citing FED. R. CIV. P. 8(a)); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("So, what do we take away from *Twombly, Erickson*, and *Iqbal*? First, a plaintiff must provide notice to defendants of her claims."). Accordingly, the Court finds that Jackson fails to state a claim upon which relief may be granted. Northwestern's motion to dismiss is granted with respect to Count II.

## II. Breach of Contract (Count III)

In Count III, Jackson alleges that she entered into an oral, written, or implied agreement with Northwestern at the time of her hiring. SAC ¶ 59. Jackson claims that the oral and/or written agreement constituted a valid and enforceable contract, because it contained "a promise sufficiently clear that as an employee, Plaintiff would reasonably believe a promise had been made." *Id*. ¶ 60. Jackson further asserts that under this agreement, Northwestern promised not to terminate her without good cause. *Id*. ¶ 62. Jackson claims that Northwestern breached this contract by

7

terminating her without conducting an adequate investigation or following any of its procedures as outlined in the employee handbook and rules and regulations. *Id.* ¶ 68. In response, Northwestern contends that Jackson fails to sufficiently plead a claim for breach of contract—oral or written. Def.'s Mem. at 4–6.

### A. Oral Contract

Northwestern first addresses the assertion that it entered into an oral contract with Jackson at the time of her hiring. Northwestern notes that to state a claim for an oral contract for employment that is not at-will, a plaintiff must include allegations that reflect an offer and acceptance, consideration, definite and certain terms, performance of all required contractual conditions, breach by the employer, and resulting damages. *Id.* at 5 (citing *Britton v. IIT Tech. Institute*, 2014 WL 1568684, at *4 (N.D. Ill. Apr. 17, 2014)); *see also Zemke v. City of Chi.*, 100 F.3d 511, 513 (7th Cir. 1996). Northwestern argues that Jackson fails to plead any of the terms of the alleged oral contract that promised termination only for cause, and any assertion of an oral contract should be dismissed. *Id.* at 5 (citing *Britton*, 2014 WL 1568684, *4 (dismissing breach of oral contract claim where the allegations did not demonstrate the necessary elements, including any specific allegations about the offer and acceptance)). The Court agrees. The Second Amended Complaint is devoid of any factual allegations regarding the elements necessary for the formation of an oral contract. To the extent that Jackson's breach of contract claim relies on an oral contract, the claim is dismissed.

## B. Written Contract

Jackson's claim that Northwestern breached a written contract fares no better. Northwestern argues that as a baseline, Jackson fails to attach a copy of any written agreement or any "employee handbook." Def.'s Mem. at 5. Northwestern continues that even assuming Jackson is referring to the Northwestern Rules for Personal Conduct (referenced in SAC ¶¶ 30–31), the Rules expressly states that it "creates no rights, contractual or otherwise," that the policy statements therein "should not be considered promises," and that nothing in the policy "impairs the right of an employee or NMHC to terminate their employment at will." Def.'s Mem., Exh. B at 6.[4] Under Illinois law, as Northwestern concedes, although an employee hired without a fixed term is presumed to be an at-will employee, an employee handbook *may* create an enforceable contract if the traditional requirements of contract formation are present. *Duldulao v. St. Mary of Nazareth Hospital Center,* 505 N.E.2d 314, 318 (Ill. 1987). However, where the employee handbook contains a disclaimer indicating that the handbook promises nothing and does not act as a contract, no enforceable contractual rights will be conferred on the employee based on that handbook, as is the case here. *Ivory v. Specialized Assistance Services,* 850 N.E.2d 230, 233 (Ill. App. Ct. 2006). Northwestern submits that Jackson has not alleged the existence of a valid and enforceable contract. Def.'s Mem. at 6. Moreover, even if the Rules for Personal Conduct conferred enforceable contractual rights, Northwestern argues that Jackson

---

[4]The Court may consider Northwestern's Rules for Personal Conduct at the pleadings stage, because Plaintiff's Second Amended Complaint references the Rules for Personal Conduct (SAC ¶ 31), and the Rules are central to Plaintiff's claims. *See Allstate Life Ins. Co. v. Peoplesoft, Inc.*, 2004 WL 1375383, at *2 (N.D. Ill. May 26, 2004) (collecting cases).

9

has not alleged the Rules contain any language supporting Northwestern's promise to terminate employees only for cause. *Id*. Without a promise that termination must be for cause, there is no breach.

In response, Jackson accepts that as a general rule in Illinois, an employment handbook is not part of an employment contract, but Jackson further explains that there are two exceptions to that rule. Pl.'s Resp. at 5. Under the first exception, an employee handbook can be adopted as a modification of a pre-existing contract where sufficient consideration exists to create a mutuality of obligation. *Id*. (citing *Carter v. Kaskaskia Community Action Agency,* 322 N.E.2d 574 (Ill. App. Ct. 1974)). And under the second exception, another document may exist that could be construed as an express employment contract. Pl.'s Resp. at 5–6. Jackson argues that in this circumstance, the personnel policies contained in an employee handbook will be deemed incorporated into the contract with full contractual effect, because she will be able to prove, and a jury could find, that her allegations satisfy these two exceptions. *Id*. at 6 (citing *Piper v. Board of Trustees of Community College District No. 514*, 426 N.E. 2d 262 (Ill. App. Ct. 1981)).

The Court agrees with Northwestern that Jackson has failed to state a claim for breach of a written contract. First, as to the claim's first element (that there is a valid and enforceable contract), it is worth noting that Jackson states she is not in possession of the "written employment agreement between she [Jackson] and Northwestern." SAC ¶ 61. Even if Northwestern's Rules for Personal Conduct is the "employee handbook" referenced in the Second Amended Complaint, Jackson does

10

not address Northwestern's argument that the Rules for Personal Conduct contain a disclaimer that would negate any alleged contractual effect. With only an employee handbook that includes a preclusive disclaimer, Jackson has not plausibly alleged the existence of a contract. As for the third element, a breach, Jackson has not alleged that the Rules for Personal Conduct contain any language supporting the contention that Northwestern promises to terminate employees only for cause. Without a promise that termination must be for cause, there is no breach here. Overall, the Second Amended Complaint fails to plausibly state a cause of action for breach of a written contract. As Jackson has not plausibly stated a claim for an oral or a written contract, Count III is dismissed.

### III.    Fraudulent Misrepresentation (Count IV)

In Count IV, Jackson alleges that under her oral and/or written agreement, Northwestern made oral and written promises not to terminate her without cause. SAC ¶¶ 75, 77. Jackson further alleges that at the time of her hiring, Northwestern made false statements of material fact to her, misrepresenting that Plaintiff would have a career with Northwestern and would not be subject to discharge without cause and investigation. *Id.* ¶ 81. Jackson claims that when Northwestern made these misstatements, it knew or should have known that the representations were false. *Id.* ¶ 82. Jackson maintains that she reasonably relied upon these misrepresentations and was induced to accept employment with Northwestern. *Id.* ¶¶ 84, 85.

As a threshold issue, before even turning to the claim's merits, Northwestern argues, and the Court agrees, that the heightened pleading requirements of Federal

11

Rule of Civil Procedure 9(b) apply to claims for fraudulent misrepresentation. Def.'s Mem. at 7 (citing *Jackson-Cruz v. North Central College*, 2013 WL 6498761, at *4 (N.D. Ill. Dec. 11, 2013); *Arnold v. Janssen Pharm.*, 215 F. Supp. 2d 951, 958 (N.D. Ill. 2002) (dismissing fraudulent misrepresentation claim for failure to meet heightened pleading standard)). Rule 9(b) requires plaintiffs to allege the "who, what, when, where, and how" of the fraud. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (internal citation and quotation marks omitted). Rule 9(b) applies not only to claims of fraud, but also to those "that sound in fraud," meaning those premised on a course of fraudulent conduct. *Borsellino*, 477 F.3d at 507. Jackson concedes that her fraudulent misrepresentation claim must meet Rule 9(b)'s heightened pleading standard and contends that her Complaint satisfies this standard, as it provides a general outline of the alleged fraud scheme sufficient to reasonably notify the defendants of their role in the fraud. Pl.'s Resp. at 6–7 (citing *Midwest Grinding Co. Inc., v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992)). Northwestern counters, arguing that Jackson's Complaint fails to plead with particularity, the who, what, when, where, and how of the fraud. Def.'s Mem. at 6.

The Court agrees with Northwestern. Jackson references "conversations between Plaintiff and NMH," during which she understood that Northwestern was promising her it would not terminate her without good cause. SAC ¶ 77. Jackson alleges neither who she engaged in conversations with nor approximately when and where those conversations occurred. From the facts alleged, the Court cannot discern whether Jackson entered into a written agreement, an oral agreement, an implied

agreement, or no agreement at all. This level of uncertainty does not comport with Rule 9(b)'s particularity requirement. Because Jackson has not met the Rule 9(b) standard, her fraudulent misrepresentation claim is dismissed, and the Court need not address whether Jackson has pled the specific elements of a fraudulent misrepresentation claim. *Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1040 (N.D. Ill. 2007) ("… to proceed to trial on a claim that requires proof of an intentional fraudulent misrepresentation, a plaintiff must at the pleading stage describe with particularity the circumstances surrounding the intentional misrepresentation (*i.e.,* the 'averment of fraud')—failure to do so warrants dismissal.").

As for Jackson's negligent misrepresentation claim, Northwestern contends that this claim also fails, because Illinois has not expanded the duty requirement in a negligent misrepresentation claim to include the employment context. Def.'s Mem. at 8–9 (citing *Jones v. W.S. Darley & Co.*, 2015 WL 4100295, at * (N.D. Ill. July. 7, 2015)). In her Response, Jackson clarifies that she is not pursuing a claim for negligent misrepresentation but rather a claim for intentional (or fraudulent) misrepresentation, which she claims is not precluded by the Workers' Compensation Act, because her claim seeks redress for physical on the job injuries. Pl.'s Resp. at 6–7. The Court need not address this issue, as the Court has already determined that Jackson's Complaint fails to satisfy Rule 9(b)'s heightened pleading standard.

### IV. Motion to Strike

Pursuant to Federal Rule of Civil Procedure 12(f), Northwestern also moves to strike Jackson's allegations in her Second Amended Complaint regarding (i) color

discrimination (SAC ¶ 44); (ii) a denial of rights under the United States Constitution (*id.* ¶ 1); and (iii) defamation (*id.* ¶¶ 25, 54, 70) on the basis that such allegations are "immaterial, impertinent, or scandalous." Def.'s Mem. at 9 (citing *Naylor v. Streamwood Behav. Health Sys.*, 2012 WL 5499441, at *7 (N.D. Ill. Nov. 13, 2012) (noting that striking portions of a pleading in order to remove "unnecessary clutter from the case" can serve to expedite, not delay, the case)); *see also Hardin v. Am. Elec. Power*, 188 F.R.D. 509, 511 (S.D. Ind. 1999) ("[U]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.") (internal citations omitted). In arguing that certain allegations should be stricken, Northwestern relies entirely on Rule 12(f)'s "immaterial" restriction, but importantly, immateriality alone is not enough to trigger the Court to strike pleadings; the pleading must be prejudicial to the defendant. *See Talbot v. Robert Matthews Distrib. Co.,* 961 F.2d 654, 664 (7th Cir. 1992) ("However, mere redundancy or immateriality is not enough to trigger the drastic measure of striking the pleading or parts thereof; in addition, the pleading must be prejudicial to the defendant."). Prejudice occurs when the challenged pleading or allegation confuses the issues or is so lengthy and complex that it places an undue burden on the responding party. *See Hoffman–Dombrowski v. Arlington Int'l Racecourse, Inc.,* 11 F.Supp.2d 1006, 1009 (N.D. Ill. 1998).

Jackson fails to address Northwestern's Motion to Strike in her Response. No matter, as the Court finds that the identified allegations are immaterial to Jackson's

14

claims and prejudicial to Defendant. First, as to the "color discrimination" allegation in SAC ¶ 44, this case involves a Title VII discrimination claim based on race, not color. Any allegations concerning color discrimination are immaterial to the asserted Title VII claim and confuse a discrimination claim based on race with a discrimination claim based on color, which triggers an entirely separate administrative process. Second, as to allegations regarding the United States Constitution, Northwestern is not a government actor (as Plaintiff readily concedes, *id.* ¶ 4). Not only is Northwestern not subject to constitutional scrutiny, but allegations regarding constitutional violations are immaterial to the asserted claims and confuse Title VII issues with constitutional issues. *See Kahalnik v. John Hancock Funds, Inc.*, 1996 WL 145842, at *4 (N.D. Ill. Mar. 27, 1996) ("The NASD is not a government actor and, therefore, constitutional scrutiny does not apply."). Finally, as to allegations related to defamation, although Jackson appears to include standalone references to "defamatory statements," she makes no attempt to assert the requisite elements of a defamation claim. Allegations regarding defamatory statements are immaterial to the claims actually asserted and confuse Title VII, breach of contract, and misrepresentation claims with defamation claims, all claims comprised of entirely different elements.

Because identified allegations in paragraphs 1, 25, and 44 of Jackson's Second Amended Complaint are immaterial and confuse the claims actually at issue, the Court grants Defendant's Motion to Strike as to those allegations. The Court denies as moot Defendant's Motion to Strike as to the identified allegations in paragraphs

54 and 70, as those paragraphs fall under Count III, which is now dismissed without leave to amend, as further discussed below.

## V.     Leave to Amend

In her Response, Jackson asks for leave to file an amended complaint pursuant to Federal Rule of Civil Procedure 15 should the Court find her Second Amended Complaint deficient. Northwestern opposes this request, asserting that as a preliminary matter, Jackson should be required to file a formal motion for leave to amend setting forth her proposed amended complaint. On a more substantive basis, Northwestern argues that Jackson's Second Amended Complaint fails to cure the deficiencies Northwestern pointed out in its prior motion to dismiss. As such, Northwestern reasons that it would be futile to allow yet another amendment. Despite Jackson not filing a separate motion for leave to amend, the Court will consider the request. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) (noting that requesting leave to file an amended complaint in the response to the defendant's motion to dismiss sufficed as a request for leave).

Rule 15 allows a plaintiff to amend her complaint "once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Even though Rule 15(a) provides that "leave shall be freely given when justice so requires," a district court may deny leave to amend for undue delay, bad faith, dilatory motive, prejudice, or futility. *Gen. Elec. Capital Corp. v. Lease Resolution*

*Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The Court denies Jackson's request for leave to amend Counts II, III, and IV. Jackson has already amended her pleadings twice. Though Northwestern's motion to dismiss the First Amended Complaint was dismissed as moot in light of Jackson's refiling, Jackson did not meaningfully address the deficiencies identified in that motion to dismiss, as many of the same deficiencies are present now. Further, and perhaps more importantly, the Court finds that amendment at this point would be futile. *Nolan v. City of Chicago*, 2017 WL 569154, at *7 (N.D. Ill. Feb. 13, 2017) (denying motion for leave to amend a complaint to replead the same legal theories as futile). At this late stage, Jackson has not alleged facts sufficient to support actionable claims for Counts II, III, or IV. On a Second Amended Complaint, the Court still cannot discern which cause of action is being asserted in Count II. Jackson cannot allege the existence of an enforceable contract, as required under Count III. And, Jackson has not made a meaningful attempt to comply with Rule 9(b), as required under Count IV. As such, Jackson's request for leave to amend is denied.

## Conclusion

For the foregoing reasons, Northwestern's Motion to Dismiss Counts II, III, and IV of Jackson's Second Amended Complaint is granted. Northwestern's Motion to Strike certain allegations is granted in part and denied as moot in part. The Motion to Strike is granted as to allegations in paragraphs 1, 25, and 44 of the Second Amended Complaint concerning color discrimination, United States Constitutional

17

violations, and defamation; those allegations are hereby stricken. The Motion to Strike is denied as moot as to the allegations in paragraphs 54 and 70 concerning defamation, as Count III is dismissed (without leave to amend). Finally, Jackson's request for leave to amend is denied.

                                                                 Franklin U. Valderrama
                                                                 United States District Judge

DATED: November 19, 2020